# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**COEXIST FOUNDATION, INC.,**

**Plaintiff,**

**-vs-** **Case No. 6:11-cv-72-Orl-28KRS**

**AMY FEHRENBACHER, MICHAEL FEHRENBACHER, JOHN LACART, UNITED FUNDING, INC., MWF FINANCIAL & MORTGAGE CENTER, INC., MIDWEST FUNDING BANKCORP, INC., UNITED TITLE OF ILLINOIS, INC.,**

**Defendants.**

---

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE (Doc. No. 9)** |
| **FILED:** | **January 24, 2011** |

Based on the facts and analysis set forth herein, I respectfully recommend that the Court **TRANSFER** the case to the United States District Court for the Northern District of Illinois, a District in which the case could have been brought and that can exercise personal jurisdiction over all of the Defendants.

## I.     PROCEDURAL HISTORY.

Plaintiff Coexist Foundation, Inc. (Coexist) filed a complaint against Defendants Amy Fehrenbacher, Michael Fehrenbacher, John Lacart, United Funding, Inc., MWF Financial & Mortgage Center, Inc., Midwest Funding Bankcorp, Inc. and United Title of Illinois, Inc. in the Circuit Court of the Ninth Judicial Circuit, In and For Orange County, Florida.  Doc. No. 2.  In Counts I and II, Coexist alleges that United Funding breached an Escrow Disbursement Agreement and Joint Venture Agreements it entered into with Coexist.  In Count III, Coexist alleges that United Title breached an escrow agreement it entered into with Coexist.  In Counts IV and V, Coexist alleges that all Defendants conspired to and committed fraud in the inducement.  In Counts VI through XI, Coexist alleges that all Defendants violated various Florida statutes.  Doc. No. 2.

Defendants removed the case to this Court based on diversity jurisdiction.  Doc. No. 1. Defendants then filed a motion to dismiss the case for lack of personal jurisdiction over all Defendants and improper venue.  Doc. No. 9.  They filed affidavits of each Defendant, except Midwest Funding Bankcorp, in support of the motion.  Doc. No. 15.

Coexist responded to the motion.  Doc. No. 16.  It filed the affidavit of Tim Hubman, President of Coexist, and attached exhibits in support of the motion.  Doc. No. 17.  Coexist argued that this Court could exercise personal jurisdiction over each Defendant because each Defendant committed tortious acts in Florida and had sufficient minimum contacts with Florida to satisfy due process.  Doc. No. 16 at 5.

The presiding district judge referred the motion to me for issuance of a Report and Recommendation. Because the facts alleged in the complaint and the sworn statement of the parties could not be reconciled, I permitted the parties to conduct jurisdictional discovery, and I held an

evidentiary hearing. Doc. Nos. 19, 22, 44, 47. I also took judicial notice of another case pending in this Court, *United Funding, Inc. and Michael Fehrenbacher v. John Boschert, et al.*, Case No. 6:09-cv-1839-28GJK. Doc. No. 37.

## II. STANDARD OF REVIEW.

"A federal court sitting in diversity may properly exercise personal jurisdiction over a defendant only if two requirements are met: (1) the state long-arm statute and (2) the Due Process Clause of the Fourteenth Amendment." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999). A plaintiff has the burden "to plead sufficient material facts to establish the basis for exercise of" personal jurisdiction. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (citing *Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 583 (M.D. Fla.1991)). If the plaintiff meets this burden, "'the burden shifts to the defendant to make a prima facie showing of the inapplicability of the statute [that provides the basis for exercising personal jurisdiction over the defendant]. If the defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint.'" *Id.* (quoting *Prentice*, 779 F. Supp. at 583).

> Where directly conflicting affidavits cause the Court to hold an evidentiary hearing . . . , the plaintiff bears the burden of proving personal jurisdiction at the evidentiary hearing. . . . Also, with respect to those points upon which the competing affidavits do not conflict, the Court may accept as true the applicable allegations in the complaint for purposes of resolving jurisdictional issues under the requirements of the Florida long-arm statute and the Due Process Clause.

*Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1227 (M.D. Fla. 2000) (citing *Venetian Salami Co. V. Parthenais*, 554 So.2d 499, 502 (Fla. 1989); *Musiker v. Projectavision, Inc.*, 960 F. Supp. 292, 295 (S.D. Fla. 1997); and *Posner*, 178 F.3d at 1215)).

## III. SUMMARY OF RELEVANT FACTS.[1]

Tim Hubman (Hubman), President of Coexist, and Michael Fehrenbacher (Fehrenbacher) were the primary witnesses presented by the parties at the evidentiary hearing. They provided conflicting versions of the relationship between Coexist and Defendants. Neither of them was entirely credible. Accordingly, I base my findings of fact on unrebutted testimony and on testimony of Hubman and Fehrenbacher that is most consistent with the documentary evidence and the admissions of Fehrenbacher and United Funding in their pleadings in *United Funding, Inc , et al. v. John Boschert, et al.*, Case No. 6:09-cv-1839-28GJK (the "*Assured Capital* case").

Coexist is a Florida charitable corporation that has its principal place of business in Dade County, Florida. Hubman also resides in Dade County, Florida. The individual Defendants are residents of Illinois. The corporate Defendants are Illinois corporations with their principal places of business in St. Charles, Illinois.

Fehrenbacher founded and operated the corporate Defendants. MWF Financial & Mortgage Center, Inc. was a mortgage broker. In 2002, Fehrenbacher changed the name of MWF Financial & Mortgage Center, Inc. to Midwest Funding Bancorp, Inc. Midwest Funding Bancorp is a lending institution licensed in multiple states to make mortgage loans to consumers. Midwest Funding Bancorp had branches operated by independent contractors in other locations, including in Florida. Fehrenbacher registered Midwest Funding Bancorp and Midwest Funding, Inc. as fictitious names for MWF Financial & Mortgage Center, Inc. in Florida in 2006. Plaintiff's Exs. 3, 13. MWF

[1] The transcript of the second day of the evidentiary hearing had not been filed when this Report and Recommendation was written. Accordingly, I have not cited to the transcripts of the evidentiary hearings.

Financial & Mortgage Center, Inc. d/b/a Midwest Funding Bancorp was licensed to do business in Florida from 2006 through 2011. Plaintiffs' Exs. 4, 5, 6, 7, 8, 9, 10, 11, 12. Many of Fehrenbacher's emails bear a tag line, "MidWest Funding Bancorp . . . Serving all Your purchase and refi needs in: IL, IN, MI, WI, MN, CA, ID, CO, FL, CT, KY, TN, MO & MT." *See* Plaintiff's Ex. 21.

United Funding, Inc. is a brokerage company that originates mortgage applications and brokers them to lending companies, including Midwest Funding Bancorp. United Funding was not licensed to do business in Florida. Defendant Amy Fehrenbacher, Fehrenbacher's wife, agreed to be the President of United Funding as an accommodation to her husband. She has never been involved in the business of United Funding, and she has no knowledge of facts relevant to this case.[2]

United Title of Illinois, Inc. writes residential title applications for mortgage loans in Illinois and elsewhere. Defendant John Lacart is the President of United Title of Illinois, Inc. He has an ownership interest in that company, but he has never been actively involved in the business of that company. It is not licensed to do business in Florida, but it could write title applications in Florida through its underwriter. Many of Fehrenbacher's emails bear a tag line, "United Title - 'Service in All States Nationwide'." *See* Plaintiff's Ex. 21.

In the spring of 2009, Martin Bishop, one of Midwest Funding Bancorp's independent contractors, referred Hubman to Fehrenbacher to discuss investment opportunities offered by Fehrenbacher's companies. Initially they conversed by telephone between Hubman's location in

---

[2] In an affidavit filed in support of the motion to dismiss, Amy Fehrenbacher averred, in her capacity of President of United Funding, that she had personal knowledge of the facts set forth therein. Doc. No. 15 at 7-8. The testimony at the evidentiary hearing established that Amy Fehrenbacher does not have personal knowledge of the facts set forth in that affidavit. Therefore, none of the facts asserted in that affidavit have been relied on in this Report and Recommendation.

south Florida and Fehrenbacher's office in Illinois. They continued their conversations by email. Fehrenbacher was aware that Coexist and Hubman were located in Florida. *See, e.g.*, Plaintiff's Exs. 18, 20, 21 (email 7/23/09 8:54 am).

Fehrenbacher told Hubman about investment opportunities available to Coexist. *See, e.g.*, Plaintiff's Ex. 21 (email 3/18/09 8:33 am; email 4/13/10 11:06 am). On March 16, 2009, Fehrenbacher sent Hubman a United Funding Escrow Disbursement Agreement and wire transfer instructions. *Id.* (email 3/16/09 at 11:09 am). Later that month, Fehrenbacher told Hubman that it was an opportune time to invest funds in a trading opportunity Fehrenbacher was working on. He wrote, "the funds stay in my escrow acct. - 100% safety." Plaintiff's Ex. 21 (email 3/31/09 at 2:49 pm).[3]

Hubman decided to invest money on behalf of Coexist with Fehrenbacher. On April 9, 2009, Hubman, on behalf of Coexist, signed an Escrow Disbursement Agreement that provided that Coexist's investment funds would be deposited into an MWF Financial/United Funding account at Harris Bank, account no. ******0542 (the MWF/United Funding Escrow Account). Doc. No. 18. Thereafter, Hubman caused Coexist to send $300,000 to the MWF/United Funding Escrow Account. Doc. No. 2 at 26. Hubman then requested that United Funding return $150,000 to prove to him that Coexist could withdraw money from the account at any time. On April 28, 2009, MWF/United

---

[3] Hubman testified that he met with Fehrenbacher in the Tampa Bay area on March 30 or 31, 2009, while Fehrenbacher was in Florida on vacation and Hubman was on the west coast of Florida for the Grand Prix Race in St. Petersburg. Fehrenbacher denies meeting with Hubman in Florida. No evidence in the record cited to by Coexist corroborates that this meeting occurred. Hubman's reliance on email dated March 16, 2009, in which Fehrenbacher wrote that it was "nice to meet you," *id.* (email 3/16/09 11:09 am), does not support his testimony that he met personally with Fehrenbacher in Florida on March 30 or 31, 2009.

Funding wire transferred $150,000 from the escrow account to Coexist's account at Wachovia Bank in Florida. *Id.*

Being satisfied with the escrow arrangement, on June 19, 2009, Hubman caused Coexist to wire transfer $1.85 million to the MWF Financial/United Funding Escrow Account. Doc. No. 2 at 27; *see* Plaintiff's Ex. 21 (email 6/19/09 at 10:33 am [Hubman writes to Fehrenbacher that Wachovia Bank confirmed the wire transfer into the "mwf account"]). Hubman believed that Coexist's money would be invested pursuant to Joint Venture Agreements between Coexist and MWF Financial, Plaintiff's Exs. 16, 17.[4]

Meanwhile, Fehrenbacher was negotiating with principals of Assured Capital Consultants, LLC regarding a private placement trading program promising investment returns of 45% per week. *See Assured Capital* Case, Doc. No. 1-2 at 1. On June 4, 2009, Fehrenbacher traveled to Florida where he met with the principals of Assured Capital. On behalf of United Funding, Fehrenbacher entered into a Joint Venture Business Agreement with Assured Capital and an Escrow Agreement with Bryan Zuzga, P.A. (the Assured Capital Escrow Account). *Id.* at 1, 7. Under these agreements, United Funding was to make an initial cash investment of $2 million, which funds were to be wired to the Assured Capital Escrow Account. *Id.* at 5. Fehrenbacher caused the money received from Coexist to be wire transferred to Florida for investment by Assured Capital. *See also* Doc. No. 2 at 41 (transfer of $1.85 million from MWF/United Funding Escrow, account no. ******0542 to Assured Capital).

---

[4] Fehrenbacher testified that he and Hubman exchanged these documents but that they were never signed. Hubman testified that they were signed but that he does not have an executed copy of either document because Fehrenbacher kept the executed documents.

On July 2, 2009, Fehrenbacher told Hubman that, as of the next Monday, Coexist's balance in its investments would be $2.555 million. Plaintiff's Ex. 21 (email 7/2/09 11:24 am). On July 8, 2009, Hubman instructed Fehrenbacher to wire transfer $320,000 to Coexist. *Id.* (email 7/8/09 6:18 pm). On July 17, 2009, Fehrenbacher told Hubman that he was waiting for release of the funds from the bank, and that he expected to wire transfer the funds to Coexist later that day. *Id.* (email 7/17/09 11:02 am). On July 29, 2009, Fehrenbacher promised Hubman that he would have his account "square by the first thing in the morning." *Id.* (email 7/29/09 3:39 pm).

At some point, Hubman demanded return of Coexist's entire $2 million investment. On August 25, 2009, Fehrenbacher wrote, "[S]he just called and . . . is telling me your escrow - 2M will be squared away. She has to things to finish today and you are one of them. I will send the wire upon reciept. 100% gaurentee." *Id.* (email 8/25/09 1:31 pm). As of September 9, 2009, however, the money had not yet been returned. Fehrenbacher told Hubman that the Coexist "escrow is ready to be released today." *Id.* (email 9/9/09 10:16 am).[5]

On September 30, 2009, Fehrenbacher told Hubman to contact Melody O'Neal, the Escrow Manager for United Title, about coordinating the wire transfer of funds to be returned to Coexist. Plaintiff's Ex. 21 (email 9/30/09 11:07 am). On November 9, 2009, Hubman, on behalf of Coexist, entered into a escrow agreement with United Title to facilitate return of these monies. Court's Ex. 1.; *see also* Plaintiff's Ex. 21 (emails 11/23/09 10:34 am, 5:17 am, 6:12 pm).

---

[5] In the *Assured Capital* case, there are emails between Fehrenbacher and Jenifer Hoffman of Assured Capital discussing return of the money in the Assured Capital Escrow Account. *Assured Capital Case*, Doc. No. 1-2 at 21-25. In these emails, Fehrenbacher refers to $2 million invested by "his partner." *Id.* at 21. Neither Hubman nor Coexist is mentioned by name or listed as a recipient in any of these emails. This corroborates Hubman's testimony that he did not know that Coexist's money had been invested with Assured Capital.

Fehrenbacher learned at some point that Assured Capital was a Ponzi scheme. He made efforts to recoup the money he invested with Assured Capital, including Coexist's investments. As of the date of the evidentiary hearing, Assured Capital had paid monies to Fehrenbacher, of which he transmitted about $1.3 million to Coexist. Hubman acknowledges receipt of this money, but he characterized it as profits and donations, not return of Coexist's $2 million principal investment.

Assured Capital and Jenifer Hoffman agreed to entry of a stipulated final judgment against them in the amount of $5.5 million in the *Assured Capital* case. *Assured Capital* case, Doc. No. 55. Fehrenbacher and United Funding's claims against Zuzga in the *Assured Capital* case are set for trial on August 2, 2011.

## IV. ANALYSIS.

### *A. Personal Jurisdiction.*

At the close of the evidentiary hearing, counsel for Coexist stipulated that Coexist had not carried its burden of showing that this Court could exercise personal jurisdiction over Amy Fehrenbacher and John Lacart. Accordingly, I will address the personal jurisdiction analysis only as to the remaining Defendants.

#### 1. Specific Personal Jurisdiction.

In its memorandum of law, Coexist relies solely on section 48.193(1)(b), Fla. Stat., as the basis through which this Court can exercise personal jurisdiction over the Defendants. This section provides as follows:

> 1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts: . . .

(b) Committing a tortious act within this state. . . .

"'[F]or personal jurisdiction to attach under the 'tortious activity' provision of the Florida long-arm statute, the plaintiff must demonstrate that the non-resident defendant 'committed a substantial aspect of the alleged tort in Florida' by establishing that the activities in Florida 'w[ere] essential to the success of the tort.'" *Cable/Home Comm. Corp. v. Network Prod, Inc.*, 902 F.2d 829, 857 (11th Cir. 1990)(quoting *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 394 (11th Cir. 1988).

Florida law requires a court to consider whether the allegations of the complaint state a cause of action before addressing the question of whether specific jurisdiction exists. *Jackson-Bear Group, Inc. v. Amirjazil*, No. 2:10-cv-332-FtM-29SPC, 2011 WL 1232985, at * 4 (M.D. Fla. March 30, 2011). Fraud in the inducement is a tort alleged by Coexist that could establish personal jurisdiction under section 48.193(1)(b).

To establish fraud in the inducement, Coexist must allege (1) a misrepresentation of a material facts; (2) which the representor knew or should have known was false; (3) made with intent to induce the party to whom the representation was made to rely and act on it; and, (4) resulting injury to the party acting in justifiable reliance on the representation. *Lou Bachrodt Chevrolet, Inc. v. Savage*, 570 So. 2d 306, 307 (Fla. 4th Dist. Ct. App. 1990). "A corporate officer may be individually liable for torts committed even while acting as the representative of the corporate entity." *Roth v. Nautical Eng. Corp.*, 654 So.2d 978, 979-80 (Fla. 4th Dist. Ct. App. 1995).

Coexist alleges, among other things, that Defendants, through their agent Michael Fehrenbacher, falsely represented that money invested by Coexist would be held in the MWF Financial/United Funding Escrow Account and that these funds would not be disbursed without the signed instructions of Coexist. Doc. No. 2 ¶ 19. Defendants knew that these representations were not

true at the time they were made. *Id.* ¶ 56. Coexist reasonably relied upon the misrepresentations and acted upon them by transferring $2 million to the MWF Financial/United Funding Escrow Account. *Id.* ¶¶ 21, 59. After Coexist transferred $1.85 million to the MWF Financial/United Funding Escrow Account, Defendants transferred that money to Assured Capital without the specific written request of Coexist. *Id.* ¶ 24. As a result of Defendants' actions, Coexist lost its entire investment. *Id.* ¶ 57. These allegations are sufficient to state a claim for fraud in the inducement.

The Florida Supreme Court has held that "in order to 'commit a tortious act' in Florida, a defendant's physical presence is not required." *Wendt v. Horowitz,* 822 So.2d 1252, 1260 (Fla. 2002). Committing a tortious act in Florida under section 48.193(1)(b) can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida. However, the cause of action must arise from the communications. This predicate finding is necessary because of the connexity requirement contained in section 48.193(1). *Id.* at 1260.

The evidence established that Fehrenbacher, acting on behalf of MWF Financial & Mortgage Center, Inc. d/b/a Midwest Funding Bancorp, Inc. and United Funding, Inc., made the allegedly false representations to Hubman about the safety of money to be invested by Coexist. Fehrenbacher made these purportedly false representations through telephone and email communications to Florida, which communications were received and relied on by Hubman, a Florida resident, on behalf of Coexist, a Florida corporation. This evidence is sufficient to establish that Fehrenbacher, MWF Financial & Mortgage Center, Inc., Midwest Funding Bancorp, Inc. and United Funding, Inc. committed a substantial aspect of the tort of fraudulent inducement through communications into Florida, which communications are the basis of the claim. Therefore, the Court can exercise personal jurisdiction over these Defendants under section 48.193(1)(b).

The evidence did not establish false representations made to Coexist on behalf of United Title of Illinois, Inc. The escrow agreement entered into in November 2009 was to facilitate return of money from Assured Capital; no false representations about the escrow agreement were alleged. Therefore, Coexist has not sustained its burden of proving that United Title of Illinois, Inc. committed a substantial aspect of the tort of fraud in the inducement in Florida.

2. Due Process.

In order for jurisdiction to comport with the due process clause, there must be a "purposeful availment of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1363 (11th Cir. 2006) (internal quotation marks omitted). Jurisdiction may be found if defendant's "conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In order to determine whether sufficient minimum contacts exist in intentional tort cases, the Eleventh Circuit applies the "effects" test. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n. 28 (11th Cir. 2009) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). "[T]he effects test requires a showing that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." *Id*.

The evidence established that Fehrenbacher on behalf of MWF Financial & Mortgage Center, Inc., Midwest Funding Bancorp, Inc. and United Funding, Inc., made false representations to Coexist to induce Coexist to invest money. The evidence shows that Fehrenbacher knew that Coexist and

Hubman were located in Florida. Fehrenbacher, on behalf of MWF Financial & Mortgage Center, Inc., Midwest Funding Bancorp, Inc. and United Funding, Inc., could reasonably have anticipated an injury to Coexist in Florida by transfer of Coexist's money from the MWF Financial/United Funding Escrow Account without authorization by Coexist. Therefore, Coexist has sustained its burden of establishing that Fehrenbacher, MWF Financial & Mortgage Center, Inc., Midwest Funding Bancorp, Inc. and United Funding, Inc. have sufficient minimum contacts with Florida.

Even when a defendant has constitutionally significant contacts within the forum state, jurisdiction must also be evaluated in light of several other factors to determine whether its exercise would comport with "fair play and substantial justice." *Int'l Shoe v. Washington*, 326 U.S. 310, 320 (1945). These factors include the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute. *World-Wide Volkswagen*, 444 U.S. at 292. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Fehrenbacher, MWF Financial & Mortgage Center, Inc., Midwest Funding Bancorp, Inc. and United Funding, Inc. have not presented compelling reasons that would make the exercise of personal jurisdiction over them inconsistent with fair play and substantial justice.

*B. Improper Venue and Forum Non Conveniens.*

Defendants argue that this case must dismissed because the parties agreed in the joint venture agreements allegedly entered into between Coexist and MWF Financial that suit should be brought in federal or state courts in Kane County, Illinois. In *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22,

28 (1988), the United States Supreme Court held that 28 U.S.C. § 1404(a) governs the parties' venue dispute arising from a contractual forum selection clause.

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Supreme Court has explained that the federal system "provide[s] for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action." *Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). Therefore, the question presented by the motion will be reframed under § 1404(a) as a *forum non conveniens* issue.

"'The *forum non conveniens* determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.'" *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)). In making this determination, the Court must consider "[t]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* at 1331 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

None of the parties in this case are residents of the Middle District of Florida. Coexist and Hubman, its President, reside in the Southern District of Florida. Defendants reside and conduct business in the Northern District of Illinois. The present case could not have been brought against all of the named Defendants in the United States District Court for the Southern District of Florida,

however, due to the lack of personal jurisdiction over three of the Defendants. The case might have been brought against all of the Defendants in the Northern District of Illinois because each Defendant resides in that District and the financial transactions at issue were conducted through financial institutions in that District.

The Court is mindful that Coexist's choice of forum is generally entitled to deference in the decision whether to transfer the case. Here, however, Coexist did not identify any interaction it had with Defendants in the Middle District of Florida, other than a possible meeting in the Tampa Division of this Court.[6] Furthermore, Coexist consented to exercise of jurisdiction in Illinois in the joint venture agreements that Hubman testified Coexist entered into with Defendants. The convenience of witnesses does not favor the Middle District of Florida over the Northern District of Illinois, except to the extent that individuals with Assured Capital may have relevant evidence.[7] To the extent that Coexist wishes to pursue its claims against Defendants over whom this Court cannot exercise personal jurisdiction, the interests of justice favor litigating the entire case in one forum, which would be the Northern District of Illinois. Because the parties have requested that this Court issue a new scheduling order, the litigation of the matter will not be delayed by the transfer. Under these circumstances, the balance of the factors support transfer of the case to the United States District Court for the Northern District of Illinois.

---

[6] Inconvenience to Plaintiff's counsel is not a factor that should be considered in the transfer decision. *Poncy v. Johnson and Johnson*, 414 F. Supp. 551, 558 (M.D. Fla. 1976).

[7] Because Assured Capital and Jenifer Hoffman resolved the *Assured Capital* case by a stipulated judgment, the argument of Plaintiff's counsel that this Court is already familiar with the matters at issue in this case is not supported by the record.

## V. RECOMMENDATION.

I respectfully recommend that the Court **GRANT** the motion in part, **TRANSFER** the case to the United States District Court for the Northern District of Illinois, and **DENY** the motion in other respects. Alternatively, the Court may grant the motion in part, dismiss the complaint as to Amy Fehrenbacher, John Lacart, and United Title of Illinois, Inc. due to lack of personal jurisdiction over them, and deny the motion in all other respects.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 27, 2011.

Karla R. Spaulding
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy